[830 NYS2d 33]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANTHONY HILL, Appellant.

First Department, January 30, 2007

### APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Barbara Zolot* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*David M. Cohn* of counsel), for respondent.

### OPINION OF THE COURT

McGuire, J.

In a 32-count indictment issued in March 2001, defendant was charged with raping, sodomizing and sexually abusing his daughter. In April 2002, defendant proceeded to trial before Justice Allen and a jury. Following the direct examination of defendant's daughter, however, counsel informed the court that

defendant wished to plead guilty to one count of first-degree rape in full satisfaction of the indictment. During the course of the ensuing, comprehensive plea colloquy, defendant admitted that on June 13, 2000 he had engaged in sexual intercourse with his daughter by forcible compulsion, that her testimony on direct examination was true and that he had forced her to have sexual relations with him since she was nine years old. Before accepting defendant's guilty plea, Justice Allen informed defendant that the sentence would be 15 years in prison; defendant acknowledged that he understood. At sentencing on May 14, 2002, the negotiated 15-year prison sentence was imposed.

Nearly two years later, in March 2004, defendant moved pursuant to CPL 440.10 to vacate his conviction. Relying on *People v Catu* (4 NY3d 242 [2005]), defendant argued that his guilty plea was involuntary, because he had not been informed that his sentence included a five-year period of postrelease supervision. Following a hearing, Justice Allen denied defendant's motion in a written decision dated May 31, 2005. However, for the reasons discussed below, Justice Allen modified defendant's sentence to a prison term of 12½ years and 2½ years of postrelease supervision. Defendant now appeals, both from the judgment of conviction rendered May 14, 2002, as amended May 31, 2005, and, by permission of a Justice of this Court, from Justice Allen's order, entered May 31, 2005, which denied his motion to vacate the judgment and modified the sentence.

Although the issue is by no means free from doubt, reversal of the judgment and order appealed from is not required by the recent decision of the Court of Appeals in *People v Van Deusen* (7 NY3d 744 [2006]). A number of issues complicate the analysis of defendant's claim under *People v Catu* (4 NY3d 242 [2005]), and these issues must be discussed before the potential impact of *Van Deusen* can be appraised. At bottom, however, in the absence of an unequivocal mandate from the Court of Appeals requiring vacatur of the plea for every *Catu* violation, regardless of whether the defendant has been prejudiced by or even benefitted from the violation, I believe that the Legislature has made clear that defendant's claim of entitlement to that remedy should be rejected.

Justice Allen's approach to defendant's claim under *Catu* is sensible for at least three reasons. First, by modifying the sentence to a prison term of 12½ years and 2½ years of postrelease supervision, Justice Allen put defendant in a better position than he would have been in if he lawfully could have been

sentenced to a term of 15 years with no period of postrelease supervision. Under the original sentence, defendant would be eligible for conditional release after serving six sevenths of a 15-year term, i.e., after serving 12 years and some 10 months (*see* Penal Law § 70.30 [4] [a]; § 70.40 [1] [b]; Correction Law § 803 [1] [c]). Under the modified sentence, defendant is eligible for conditional release after serving six sevenths of a 12½-year term, i.e., after serving 10 years and just under nine months (*id.*). Defendant's release from prison if he were not to receive any allowances for good behavior under Correction Law § 803 would be required after 15 years under the original sentence, but is required 2½ years earlier, after 12½ years, under the modified sentence.

Against these benefits, there is only the fact that defendant would not have been subject to what the law denominates as a period of "postrelease supervision" under the original sentence. But assuming that under that sentence defendant would earn the allowances for good behavior and thus would be released after 12 years and 10 months, under Penal Law § 70.40 (1) (b) he would be subject to the supervision of the Board of Parole for the unserved portion (two years and two months) of the term. Accordingly, on this assumption he would be subject to what is tantamount to a period of postrelease supervision, and to such a period nearly as long as the one he is subject to under the modified sentence. Moreover, he would be conditionally released from prison significantly later (two years and one month later) under the original sentence than he would be under the modified sentence.

On the contrary assumption that defendant would not earn the allowances, he hardly is prejudiced by being subject to a 2½-year period of postrelease supervision following his release from prison after 12½ years. After all, on this hypothesis he would not even be released from prison under the original sentence until he had served the entire 15-year term. Being released from prison after 12½ years with a possibility of being returned to prison for up to 2½ years, is better than not being released after 12½ years with the certainty of remaining in prison for 2½ more years.

Surprisingly or not, defendant disagrees. At the hearing on his motion to vacate the conviction, he apparently testified that he would rather spend 15 years in prison than serve any time under a period of postrelease supervision. But as Justice Allen stated in his well-reasoned written opinion, that claim is

"disingenuous at best; any rational person would choose liberty over incarceration." If defendant has some legally cognizable right to an irrational choice, the modified sentence presents no obstacle. If defendant were to earn the allowances for good behavior unwittingly or even against his will, the applicable statute provides only that a person who receives good behavior time and is eligible for release "shall, *if he so requests*, be conditionally released from the institution" (Penal Law § 70.40 [1] [b] [emphasis added]). The key to remaining in jail, in other words, would be in defendant's hands. As Justice Allen observed, "[s]ince he would then receive the 15-year sentence he was promised, there still would be no reason to allow him to take back his plea."

Defendant's position, moreover, is undermined as well by its consequences. If Justice Allen had modified the sentence by imposing a sentence of 10 years in prison with $2^{1}/_{2}$ years of postrelease supervision, the People would have been entitled to have the plea vacated (*see People v Farrar,* 52 NY2d 302, 307-308 [1981] ["Where the record shows that the prosecutor's consent to a plea is premised on a negotiated sentence and a lesser sentence is later deemed more appropriate, the People should be given the opportunity to withdraw their consent"]).[1] The logic of defendant's position is that he, too, would have the right to have his plea vacated despite the benefits such an unequivocal windfall would confer. If the sentence as actually modified is improper, the hypothetical modification also would be improper. Conversely, if such a hypothetical modification would not entitle defendant to have his plea vacated, the actual modification does not warrant that relief either. The precise extent of the windfall benefit cannot be outcome determinative.

Second, Justice Allen's approach furthers the People's strong interest in finality (*see People v Keizer,* 100 NY2d 114, 118 [2003] ["A guilty plea . . . generally marks the end of a criminal case, not a gateway to further litigation" (citation omitted)]; *People v Frederick,* 45 NY2d 520, 525 [1978] ["Only rigorous adherence by the courts to a policy of affording guilty pleas a great measure of finality will immunize plea negotiations from indiscriminate potshots"]).

Third, albeit relatedly, the measure of protection for the People's strong finality interest provided by Justice Allen's ap-

---

1. Here, of course, the People are not seeking to have the plea vacated. Indeed, as Justice Allen's written opinion indicates, the People suggested the modification in their opposition to defendant's motion to vacate.

proach is particularly important in light of the absence of any restrictions under current law on the timing of *Catu* claims. That is, no provision of CPL 440.10 or CPL 440.30 requires that a *Catu* claim be made within a particular time period or even that it be prosecuted diligently. Accordingly, a defendant may sit back and wait for strategic reasons (until, for example, he has reason to believe a key prosecution witness is or may not be willing or available to testify) before advancing a *Catu* claim.[2] Notably, although defendant was sentenced on May 14, 2002, he did not move until March 2004 to vacate the judgment on the ground that the failure to advise him of the period of postrelease supervision rendered his plea involuntary. Whatever the extent of the lack of diligence and attendant prejudice to the People in this case, a lack of diligence all but inevitably will occasion severe prejudice in at least some cases.

Moreover, Justice Allen's approach is attractive to appellate courts in light of CPL 470.05 (1), which commands that "[a]n appellate court *must* determine an appeal without regard to technical errors or defects which do not affect the substantial rights of the parties" (emphasis added). This is not to say that a *Catu* claim is inherently "technical" in nature. As discussed below, the *Catu* opinion makes clear that substantial rights of a defendant are or at least can be implicated when the direct consequences of a plea are not explained by the trial court to a defendant who offers to plead guilty. But as this case illustrates, it does not follow that substantial rights invariably are implicated let alone compromised whenever a *Catu* error occurs.[3] In addition, key issues on this consolidated appeal may be reasonably

---

2. Only one particular ground for relief under CPL 440.10—claims of newly discovered evidence—is subject to an express, due diligence requirement (CPL 440.10 [1] [g]). CPL 440.10 (3) (a) is not to the contrary. Although it creates a discretionary due diligence bar to certain CPL 440.10 motions, the bar arises only when the movant previously has appealed from the judgment and the ground raised in the motion was not determined upon the appeal. Thus, it does not purport generally to require that CPL 440.10 claims be raised with due diligence. Rather, its evident purpose is to permit the court to deny a second bite at the apple of review when a CPL 440.10 claim could have been raised with due diligence on direct appeal. Because defendant had not perfected his direct appeal at the time he moved to vacate the judgment pursuant to CPL 440.10, the People did not and could not ask Justice Allen to deny the motion under CPL 440.10 (3) (a).

3. The substance of a *Catu* claim is that the defendant did not "knowingly, voluntarily and intelligently choose among alternative courses of action" (*Catu*, 4 NY3d at 245) due to not being aware of the postrelease supervision component of the sentence. Obviously, at least some such claims will be raised

considered "technical" in nature, such as whether Penal Law § 70.45 (2) should be construed so as to deem a particular period of postrelease supervision to have been imposed whenever a sentencing court fails to specify the period upon sentencing a defendant for a violent felony offense and whether Justice Allen was without authority under CPL 430.10 to modify the sentence. In any event, a reasonable interpretation of CPL 470.05 (1) is that an error or defect is "technical" if it does not affect adversely a substantial right. As discussed above, no substantial rights of defendant were prejudiced by the modified sentence. Accordingly, given this mandate to disregard technical errors, and in the absence of an unequivocal mandate by the Court of Appeals that vacatur of the plea is the only remedy for a *Catu* violation, defendant's claim of entitlement to that remedy should be rejected.

Defendant advances two distinct arguments in support of reversal, each of which alone would be sufficient to compel vacatur of his guilty plea. He argues both that the sentence modification was barred by CPL 430.10 and that *Catu* required that his guilty plea be vacated. With respect to the first contention, the controlling precedent is *People v Richardson* (100 NY2d 847 [2003]).

In *Richardson,* the issue was whether CPL 430.10 prohibited the trial court from modifying the sentences previously imposed on two intentional murder convictions so that they would run consecutively to an undischarged term of imprisonment that had been imposed years earlier on an unrelated murder conviction. By operation of law, the trial court's failure to specify at the time sentence was imposed that the sentences on the intentional murder convictions would run consecutively to the undischarged term resulted in those sentences running concurrently with the undischarged term (*id.* at 849, citing Penal Law § 70.25 [1] [a]). In relevant part, CPL 430.10 provides that "[e]xcept as otherwise specifically authorized by law," a sentence of imprisonment that is "in accordance with law . . . may not be changed, suspended or interrupted once the term or period of the sentence has commenced."

After reviewing its "CPL 430.10 jurisprudence" (100 NY2d at 850), the Court stated that "[d]espite the breadth" of this statutory prohibition, trial courts not only have "the inherent authority to remedy an illegal sentence," but also may "correct an er-

---

by defendants whose attorneys were sufficiently circumspect as to have informed them of that component prior to the plea.

ror where the sentence imposed deviates from what was expected by the court and the parties when a sentencing agreement was reached" (*id.* at 850, 851). With respect to the latter class of errors, however, the Court made clear that "[t]he authority to modify a lawful sentence that has commenced is limited to situations where the record in the case clearly indicates the presence of judicial oversight based upon an accidental mistake of fact or an inadvertent misstatement that creates ambiguity in the record" (*id.* at 853).

Here, the error in the sentence originally imposed may well reflect "judicial oversight" (*id.*), but it was based on an apparent mistake of law, not of fact, and was not an "inadvertent misstatement" (*id.*) of the type "which our reason tells us is a mere mistake" (*id.* at 851, quoting *People v Minaya,* 54 NY2d 360, 365 [1981], *cert denied* 455 US 1024 [1982] [internal quotation marks omitted]).

Accordingly, Justice Allen's authority to modify the original sentence turns on whether it was an "illegal sentence." Unlike the "mere mistake" line of cases, determining whether a sentence is "illegal" requires a purely objective analysis. Assuming no dispute about what the sentence imposed was, the inquiry is simply whether the sentence imposed was authorized by law. In *People v Williams* (87 NY2d 1014 [1996]), for example, the defendant was sentenced to an indeterminate prison term of 3½ to 7 years in prison following his plea of guilty to a class C felony offense. As a first felony offender, however, the applicable provision of the Penal Law required that the minimum period be not "more than one-third of the maximum term imposed" (Penal Law § 70.00 [3] [b]). By contrast, for a second felony offender the law required that the minimum period "be fixed by the court at one-half of the maximum term imposed" (Penal Law § 70.06 [4] [b]). The trial court, acting sua sponte, resentenced the defendant to 3½ to 10½ years, "noting that it had incorrectly sentenced defendant as a predicate rather than as a first felony offender" (*People v Williams,* 87 NY2d at 1015). The Court of Appeals upheld the sentence modification on the ground that "the trial court had the inherent power to correct an illegal sentence" (*id.*).[4]

---

4. The extent of that power, of course, is a separate issue. The Court rejected the defendant's double jeopardy objection to the modification on the ground that it "would be colorable only if the defendant's sentence had been increased beyond his legitimate expectations of what the final sentence should

Similarly, in *People v DeValle* (94 NY2d 870 [2000]), the defendant was sentenced upon his guilty plea to an indeterminate prison term of 2 to 4 years to run concurrently with an undischarged portion of an earlier sentence. Penal Law § 70.25 (2-a), however, "required that defendant's sentence run consecutively with his prior sentence" (*id.* at 871). After being so advised by the Department of Correctional Services, the court resentenced the defendant to a consecutive term. As in *Williams,* the Court of Appeals upheld the sentence modification, holding that "the trial court had inherent power to correct the illegal sentence it initially imposed" (*id.*). Also as in *Williams*, the Court made clear that the scope of that power was a separate issue. Under the particular facts in *DeValle* (i.e., the defendant's stated position at the resentencing proceeding that he wanted neither to withdraw his plea nor to be resentenced), the trial court did not exceed its authority by imposing a more severe sentence than the one originally promised (*id.* at 871-872).

Although defendant argues that the sentence originally imposed was "perfectly legal," his argument depends on what the sentence originally imposed was. If the sentence originally imposed was 15 years in prison with five years of postrelease supervision, defendant would be correct. At the original sentencing proceeding, however, Justice Allen stated only as follows: "Very well, then, Mr. Hill, it's a promised sentence, as you know, 15 years. There will also be a final order of protection which I will sign." Apart from going on to impose "a court fee called a surcharge" of $200, Justice Allen said nothing else relating to the sentence he was imposing. Moreover, as Justice Allen stated in his written decision on defendant's motion to vacate, "a five-year period of [postrelease supervision] was added" after the 15-year sentence was imposed, but not by Justice Allen. Rather, as he noted, it was added "presumably by prison authorities acting pursuant to [Penal Law] § 70.45."

Apparently mindful of these undisputed facts, defendant maintains that the "perfectly legal" sentence of 15 years in prison with five years of postrelease supervision was the "sentence imposed by operation of law" under Penal Law § 70.45 (1) and (2). Although subdivision (1) stipulates that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision," nothing in the

---

be" (*id.*). During the plea proceedings, the defendant was advised that he could receive a sentence of up to 15 years in prison (*id.*).

statute specifies that when the sentencing court is silent with respect to the required period of postrelease supervision, a five-year or any other period is deemed to have been imposed. The issue, accordingly, is one the Court of Appeals has not addressed: whether Penal Law § 70.45 should be construed to deem a particular period of postrelease supervision to have been imposed whenever a sentencing court imposes sentence pursuant to Penal Law § 70.02 and fails to specify the period.

After providing first that "[t]he period of post-release supervision for a determinate sentence shall be five years," former subdivision (2) of section 70.45 goes on to create an exception when the defendant has not previously been convicted of a felony offense. Thus, former subdivision (2) states, "except that such period shall be three years whenever a determinate sentence of imprisonment is imposed pursuant to section 70.02 of this article upon a conviction for a class D or class E violent felony offense."[5] This proviso then follows:

> "provided, however, that when a determinate sentence is imposed pursuant to section 70.02 of this article, the court, at the time of sentence, *may* specify a shorter period of post-release supervision of not less than two and one-half years upon a conviction for a class B or class C violent felony offense and a shorter period of post-release supervision of not less than one and one-half years upon a conviction for a class D or class E violent felony offense" (Penal Law § 70.45 [2] [emphasis added]).[6]

As is evident, it is sensible to construe Penal Law § 70.45 (2) to deem a five-year period of postrelease supervision to have been imposed whenever a sentencing court fails to specify the period upon sentencing a second felony offender to a determinate sentence for a violent felony offense pursuant to Penal Law § 70.04 or § 70.06 (*see People v Lingle*, 34 AD3d 287 [2006]; *People v Sparber*, 34 AD3d 265 [2006]). After all, no period of postrelease supervision is authorized other than the five-year

---

**5.** Although subdivision (2) of Penal Law § 70.45 was amended, effective January 13, 2005 (*see* L 2004, ch 738, § 35), the amendments do not affect the issue of whether a five-year period of postrelease supervision should be deemed to have been imposed whenever a sentencing court fails to specify the period upon sentencing a defendant pursuant to Penal Law § 70.02 for a class B or class C violent felony offense.

**6.** Defendant was convicted of the class B violent felony offense of rape in the first degree (Penal Law § 130.35 [1]; § 70.02 [1] [a]) and was sentenced pursuant to Penal Law § 70.02.

period specified in subdivision (2). For all violent felony offenders who are not second felony offenders, however, the statute permits the trial court to choose from within a range of periods of postrelease supervision and select the period it deems appropriate in each particular case; no period within the ranges, moreover, enjoys any presumptive status.[7]

When a court imposes sentence pursuant to Penal Law § 70.02 for a violent felony offense and fails to specify the period of postrelease supervision, it arguably would not be unreasonable to conclude that either a three- or five-year period of postrelease supervision is deemed to have been imposed as a matter of law. Some support for that conclusion is provided by the permissive language of the proviso ("the court . . . *may* specify a shorter period" [emphasis added]) that follows the two declarations that the period "shall be" five or three years. But that conclusion does not necessarily follow, as it does when sentence is imposed for a violent felony offense pursuant to Penal Law § 70.04 or § 70.06 and the court similarly fails to specify a period of postrelease supervision, from the absence of any autho-

---

7. The statute cannot be construed to authorize the Department of Correctional Services to impose the appropriate period of postrelease supervision whenever a trial court fails to perform the duty the statute enjoins it to perform. No language in the statute supports such a construction, and determining the appropriate sentence within the ranges prescribed by the Legislature is quintessentially a judicial function (*see People v Ramirez*, 89 NY2d 444, 449-450 [1996]; *People v Farrar*, 52 NY2d 302, 305-306 [1981]; *Hill v United States ex rel. Wampler*, 298 US 460, 464 [1936]). Indeed, a panel of the Second Circuit has held that a defendant's right to due process under the Federal Constitution was violated when the sentencing court made no mention of a period of postrelease supervision in imposing sentence and the Department of Correctional Services thereafter added a five-year period of postrelease supervision to his sentence (*Earley v Murray*, 451 F3d 71, 74-76 [2d Cir 2006]). The court also held that even if a five-year period of postrelease supervision was mandated by Penal Law § 70.45 (2), under the Supreme Court's decision in *Wampler* it could become part of the sentence consistent with due process only through a judicial sentencing proceeding (*id.*). We need not determine whether we agree with this reading of *Wampler*. Rather, it is sufficient to note that a significant constitutional issue would be raised if Penal Law § 70.45 (2) were construed to mandate the longest of the authorized periods of postrelease supervision (five years for a class B or C violent felony offense and three years for a class D or E violent felony offense) whenever sentence is imposed pursuant to Penal Law § 70.02 and the sentencing court fails to specify the period of postrelease supervision. Avoiding that constitutional question provides another reason to conclude that under such circumstances no period of postrelease supervision is added to a defendant's sentence by operation of law (*see Jones v United States*, 526 US 227, 239 [1999]).

rized period of postrelease supervision other than a three- or five-year period.

An alternative construction of Penal Law § 70.45 (2) is suggested by the Court of Appeals' decision in *People v Richardson* (100 NY2d 847 [2003]). In *Richardson,* the trial court failed to specify at the time of sentencing whether the consecutive sentences it imposed on two intentional murder convictions were to run concurrently or consecutively to an undischarged term of imprisonment. While no provision of law required the trial court to specify whether the sentences would run concurrently or consecutively, the governing statute expressly specifies the legal consequences of a trial court's omission. As the Court of Appeals stressed in quoting Penal Law § 70.25 (1) (a), "[i]f the court does not specify the manner in which a sentence imposed by it is to run . . . [a]n indeterminate or determinate sentence shall run concurrently with all other terms" (*id.* at 852). Accordingly, albeit implicitly, the Court held that concurrent sentences were the sentences originally imposed and that these sentences were lawful (*id.* at 852-853).

Thus, the absence of a comparable provision in Penal Law § 70.45 (2) specifying the default rule supports the conclusion that no period of postrelease supervision is deemed to have been imposed when a court sentences a defendant pursuant to Penal Law § 70.02 for a violent felony offense and does not specify the period of postrelease supervision. In construing a statute, moreover, the touchstone is the intent of the Legislature (*see Riley v County of Broome,* 95 NY2d 455, 463 [2000]). At least in some cases, the failure of a sentencing court to specify a period of postrelease supervision will reflect a mere oversight or failure to appreciate that the court has the discretionary authority to select the appropriate period from within the specified range, not a conscious belief that a three- or five-year period, as the case may be, both is the appropriate period and the legal consequence of its silence. If we assume the Legislature was aware of that practical reality, it is hardly obvious that the Legislature intended the maximum permissible period of postrelease supervision to be imposed automatically whenever a sentencing court fails to specify a period of postrelease supervision in imposing sentence pursuant to Penal Law § 70.02. That would mean, after all, that the Legislature intended the maximum period to be imposed even though, at least in some cases, the sentencing court would have determined in its discretion that a lesser period was appropriate. On this score, finally, the rule of lenity

also counsels in favor of not construing Penal Law § 70.45 (2) as providing for such a default rule (*see People v Green,* 68 NY2d 151, 153 [1986]; *Huddleston v United States,* 415 US 814, 830-831 [1974]).[8]

In short, the better conclusion is that no period of postrelease supervision is imposed by operation of law when a sentencing court does not specify a period upon sentencing a defendant for a violent felony offense pursuant to Penal Law § 70.02. Accordingly, it follows that the sentence actually imposed by Justice Allen was illegal, because "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision" (Penal Law § 70.45 [1]). Because the sentence originally imposed was illegal, Justice Allen had the authority to modify it, sua sponte or otherwise (*see People v Wright,* 56 NY2d 613 [1982]). The only remaining issue is whether Justice Allen exceeded the scope of that authority. In turn, that issue reduces to whether *People v Catu (supra)* required that Justice Allen respond to the illegality of the sentence solely by vacating defendant's conviction.[9]

But even assuming that a five-year period of postrelease supervision was imposed by operation of law, defendant would not be entitled to reversal for that reason. To be sure, the

---

8. There is authority for the proposition that a five-year period of postrelease supervision was added to defendant's sentence by operation of law (*see People v Hollenbach,* 307 AD2d 776 [4th Dept 2003], *lv denied* 100 NY2d 642 [2003]; *People v Bloom,* 269 AD2d 838 [4th Dept 2000], *lv denied* 94 NY2d 945 [2000]), including this Court's decision in *People v Adams* (13 AD3d 76 [2004], *lv denied* 4 NY3d 851 [2005]; *cf. People v Crump,* 302 AD2d 901 [4th Dept 2003], *lv denied* 100 NY2d 537 [2003] [concluding that a three-year period of postrelease supervision was imposed by operation of law when defendant was sentenced, pursuant to Penal Law § 70.02, for a class D violent felony offense]). In *Adams,* which we decline to follow, this Court cited only the Fourth Department's decision in *Hollenbach (supra)* for essentially that proposition. In *Hollenbach,* the Fourth Department stated that "[b]ecause Penal Law § 70.45 (2) provides that the period of postrelease supervision on a conviction of a class C violent felony offense is five years, 'unless the court specifies a shorter period,' there is no need for the court to specify a period of postrelease supervision at sentencing" (307 AD2d at 776 [citations omitted]). To the extent *Hollenbach* thereby suggests that the phrase "unless the court specifies a shorter period" appears in Penal Law § 70.45 (2), it is not correct. In fact, as is clear from *Bloom (supra),* one of the two decisions cited in *Hollenbach,* the phrase represents the opinion of a commentator (*Bloom,* 269 AD2d at 838, quoting Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 70.45, 1999-2000 Interim Pocket Part, at 81; *see* current Practice Commentary, Book 39, Penal Law § 70.45, at 396 [2004]).

9. For the reasons discussed below, *Catu* should not be read to require vacatur of the conviction.

mistake made in this case does not fall within the class of "mere mistake[s]" (*Richardson,* 100 NY2d at 851) that the Court of Appeals has held to be within the inherent authority of the sentencing court to remedy. But no case binding on this Court or the Court of Appeals precludes recognition of an additional exception to the prohibition of CPL 430.10, which "essentially restates the common law . . . and does not alter the power of a court to correct errors or mistakes concerning sentences" (*People v Minaya,* 54 NY2d 360, 364 [1981] [citations omitted]; *see also id.* at 366 [recognizing sentencing court's inherent authority to correct its mistake and observing that "we know of no case binding on this court" which would bar correction of the error]).

Such an additional exception to the statutory prohibition of CPL 430.10 should be recognized for the same key reason that *Catu* should not be construed to require that defendant's conviction be vacated: a contrary conclusion is inconsistent with the mandate of CPL 470.05 (1) to decide appeals without regard to technical defects.

Although the *Catu* opinion does not expressly establish a per se rule of reversal, nothing therein suggests that some failures to advise a defendant about postrelease supervision do not require that the guilty plea be vacated. To the contrary, the opinion broadly states that "[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction" (4 NY3d at 245). Apart from referring to what such a failure of "a court" requires, rather than what was required by the failure so to advise Catu, the Court immediately went on to make clear that harmless error analysis is not applicable to such failures (*id.*).

Despite the broad scope of the Court's reasoning in *Catu,* it is axiomatic that an appellate court decides only the case before it (*see Matter of Seelig v Koehler,* 76 NY2d 87, 92 [1990] [distinguishing prior decisions and observing that "the identification and weighing of all the unique and particular facts of each case governs"], *cert denied* 498 US 847 [1990]; *Roosa v Harrington,* 171 NY 341, 350 [1902] ["each case, as it arises, must be viewed and decided according to its own particular facts and circumstances, and will become a controlling precedent, only, where the facts are the same"]). In *Catu,* the lowest determinate

sentence authorized for a second felony offender, like Catu, convicted of attempted robbery in the second degree, a class D violent felony offense (Penal Law § 70.02 [1] [c]), is three years (Penal Law § 70.06 [6] [c]). As the Court's opinion states, that is the sentence Catu received (4 NY3d at 244). Because he received the minimum sentence authorized by law, neither the Court nor the parties had any occasion to discuss the extent to which a sentence reduction might be an adequate remedy.

In *Van Deusen* (7 NY3d 744 [2006]), the trial court did not make any mention of postrelease supervision in the course of accepting the defendant's plea of guilty to first-degree robbery and promising a sentence of not less than five or more than 15 years in prison. At sentencing, the defendant moved to withdraw the plea on the ground that she had not been advised she was subject to postrelease supervision. The trial court denied the motion and sentenced her to eight years' imprisonment and five years of postrelease supervision (*id.* at 745).

Reversing the Appellate Division, which had affirmed, the Court of Appeals vacated the guilty plea. Quoting from *Catu*, the Court stated that " '[b]ecause a defendant pleading guilty to a determinate sentence must be aware of the postrelease supervision component of that sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action, the failure of a court to advise of postrelease supervision requires reversal of the conviction' " (*id.* at 745-746, quoting *People v Catu*, 4 NY3d at 245). The Court went on to hold as follows:

> "While defendant's sentence here, including postrelease supervision, was actually less than the maximum potential period of incarceration that she agreed to serve, this case is still indistinguishable from *Catu*. At the time defendant pleaded guilty, she did not possess all the information necessary for an informed choice among different possible courses of action because she was not told that she would be subject to mandatory postrelease supervision as a consequence of her guilty plea. Accordingly, defendant's decision to plead guilty cannot be said to have been knowing, voluntary and intelligent" (*Van Deusen*, 7 NY3d at 746).

Here, as in *Catu* and *Van Deusen*, defendant unquestionably did not possess all the information necessary for an informed choice. In a critical respect, however, this case nonetheless is

distinguishable from both *Catu* and *Van Deusen*. In both *Catu* and *Van Deusen*, no lawful action could be taken in those cases after the plea was entered—other than vacating the plea—that would render academic the claim that the defendant did not make an informed choice. In this case by contrast, the modification of defendant's sentence did precisely that. As discussed above, there is no rational reason why defendant, having accepted a sentence of 15 years in prison, would reject a sentence of 12½ years in prison and 2½ years of postrelease supervision. As a result of the sentencing modification, in other words, it can be said that defendant was not prejudiced in the slightest by not being aware at the time of the plea that a period of postrelease supervision was mandatory. Indeed, the modification put defendant in a better position than he would have been if the promised sentence lawfully could have been imposed.

To vacate the plea under these circumstances would confer upon defendant a benefit—and, depending on subsequent events, perhaps a windfall—that is not necessary to rectify the wrong done at the plea. By contrast, to recognize that defendant was not prejudiced by the *Catu* violation in light of the sentencing modification and affirm the judgment of conviction would promote the People's strong interest in finality (*see People v Keizer,* 100 NY2d at 118; *People v Frederick,* 45 NY2d at 525). Moreover, the sentencing modification essentially operated to give defendant the full benefit of the sentence he was promised at the time of the plea. As the Court of Appeals has stated, "the failure or inability to fulfill a [sentencing] promise requires either that the plea of guilty be vacated or the promise fulfilled, but there is no indicated preference for one course over the other" (*People v Selikoff,* 35 NY2d 227, 239 [1974], *cert denied* 419 US 1122 [1975]). To the contrary, "[t]he choice rests in the discretion of the sentencing court" (*id.*).

As noted, the Court held in *Van Deusen* that the case was "indistinguishable from *Catu*" even though the "defendant's sentence . . . , including postrelease supervision, was actually less than the maximum potential period of incarceration that she agreed to serve" (*Van Deusen,* 7 NY3d at 746). This observation does not render this case indistinguishable from *Van Deusen*. To the contrary, *Van Deusen* would be indistinguishable only if the sentence therein, including postrelease supervision, was actually less than the *minimum* period of incarceration that she had agreed to serve. Here, the modified sentence, including postrelease supervision, is actually less than the

sentence defendant agreed to serve. Under these circumstances, where defendant was not adversely affected in any way by the *Catu* error, it makes no sense to vacate the plea merely because, at the time of the plea, defendant "did not possess all the information necessary for an informed choice among different possible courses of action" (*id.*).

The insignificance of the *Catu* error in this case can be appreciated more readily by considering what the fate of *Catu* claims would be if the requirement of a period of postrelease supervision were to be repealed pursuant to a statute made effective as to all cases in which sentence had not yet been imposed. Surely a defendant who pleaded guilty prior to such an enactment and had an otherwise viable *Catu* claim could not plausibly insist at sentencing that the court was required to vacate the plea. The postplea enactment would eliminate any possible prejudice and thus render academic the claim that the defendant did not possess all the necessary information at the time of the plea. In other words, by virtue of the postplea enactment, what had been a necessary item of information became an irrelevancy.

In this case, the postplea sentencing modification similarly eliminated any possible prejudice to defendant. To be sure, unlike this hypothetical defendant, defendant will serve a period of postrelease supervision. Nonetheless, the sentencing modification put defendant in a better position than he would have been if the promised sentence lawfully could have been imposed. By virtue of the postplea sentencing modification, what had been a necessary item of information became an irrelevancy.

In concluding that *Van Deusen* is indistinguishable, the dissent mistakenly focuses on the fact that the sentence actually imposed was less than "the *maximum* sentencing exposure for which she bargained" (emphasis added). If the defendant in *Van Deusen* had known she would receive a sentence of eight years in prison and five years of postrelease supervision, it certainly is possible she might not have decided to plead guilty. A different conclusion is not required simply because she was told at the time of the plea that she could receive as much as 15 years in prison. After all, it is possible she pleaded guilty in the hope or belief that she would receive a sentence of five years. Accordingly, in *Van Deusen* the Court of Appeals had good reason not to be impressed by the fact that the sentence actually imposed was less than the maximum sentence for which she bargained.

Consider, however, how different the analysis would be if the sentence actually imposed in *Van Deusen* had been 2½ years in

prison and 2¹/₂ years of postrelease supervision, i.e., a total sentence less than the *minimum* period of incarceration to which she was exposed. Obviously, it cannot be supposed that the defendant would not have pleaded guilty if she had known that the sentence would be equal to or less than the minimum sentence for which she bargained. Similarly, and the dissent apparently agrees, it cannot be supposed that defendant would not have pleaded guilty if he had known that the sentence actually imposed would be a term of 12¹/₂ years in prison with 2¹/₂ years of postrelease supervision. Thus, to reiterate, *Van Deusen* would be indistinguishable only if the sentence actually imposed had been less than the *minimum* period of incarceration that she had agreed to serve.

Finally, one other observation about the dissent's writing is in order. Albeit with some uncertainty, the dissent concedes that "the sentencing court's remedy was at least arguably sensible, while defendant's position appears not to be." By thus hedging its concession, the dissent avoids deciding whether defendant is complaining about a "technical error[ ] or defect[ ] which do[es] not affect [his] substantial rights" (CPL 470.05 [1]). Unless the unequivocal mandate of the Legislature to appellate courts can be disregarded, however, the Court must decide that very issue. Moreover, although the dissent refers to the sentencing court's "arguably sensible" remedy, it does not explain how that remedy might have been inadequate to prevent prejudice to one of defendant's substantial rights.

Accordingly, the judgment of the Supreme Court, New York County (Bruce Allen, J.), rendered May 14, 2002, as amended May 31, 2005, convicting defendant, upon his plea of guilty, of rape in the first degree, and sentencing him to a term of 12¹/₂ years with 2¹/₂ years of postrelease supervision, and the order, same court and Justice, entered on or about May 31, 2005, which denied defendant's CPL 440.10 motion to vacate the judgment and modified the sentence, should be affirmed.

MARLOW, J. (dissenting). I would reverse. Defendant pleaded guilty based upon a promise that he would receive a 15-year definite prison term. However, the plea was defective, because the court did not inform defendant at the time he pleaded guilty that the promised sentence would be followed by five years of mandatory postrelease supervision (*see People v Catu*, 4 NY3d 242 [2005]). Accordingly, defendant moved to vacate the sentence, a motion the court granted to the extent of modifying defendant's sentence so that the jail time and mandatory post-

release supervision together equaled the promised 15-year sentence under the plea agreement. Notwithstanding the sentencing modification, defendant nonetheless maintains he is entitled to nothing less than vacatur of his plea.

I agree with the majority to the extent that the sentencing court's remedy was at least arguably sensible, while defendant's position appears not to be. There is no question that the modified sentence is a more lenient one and that defendant is better off than he would have been had the court been able to impose the sentence, as originally promised, of 15 years, with no postrelease supervision. Defendant would have us believe that he would rather face an uncertain total sentence greater than 15 years, if convicted after a future trial upon vacatur of his defective plea, than the 12½ years in prison followed by 2½ years' postrelease supervision as imposed by the sentencing court.

In any event, regardless of whether defendant's present claim is or is not sincere, I believe that the following clear language in the Court of Appeals' recent decision in *People v Van Deusen* (7 NY3d 744, 746 [2006]) requires that the plea be vacated:

> "While defendant's sentence here, including postrelease supervision, was actually less than the maximum potential period of incarceration that she agreed to serve, this case is still indistinguishable from *Catu*. At the time defendant pleaded guilty, she did not possess all the information necessary for an informed choice among different possible courses of action *because she was not told that she would be subject to mandatory postrelease supervision as a consequence of her guilty plea*" (emphasis added).

I believe this broad language in *Van Deusen* encompasses defendant's situation notwithstanding that Van Deusen was promised a certain sentencing range and this defendant was promised a definite sentence. The Court of Appeals was apparently not persuaded by the fact that Van Deusen's sentence, including postrelease supervision, was less than the maximum sentencing exposure for which she bargained. Here, the sentencing court modified defendant's sentence so the total sentence, including postrelease supervision, would equal the promised sentence. I perceive no difference in these two sentencing promises which would warrant disparate remedies—a vacatur for Van Deusen as the Court of Appeals held, and sentence modification for this defendant as the majority maintains—in light of *Van Deusen*'s above-quoted focus on the question of

whether the defendant possessed all the information necessary to make an informed choice regarding the plea, not on whether the ultimate sentence the court actually imposed comported with its sentence promise.

In my view, because *Van Deusen* appears dispositive, the issue discussed by the majority regarding the legality of the sentence originally imposed need not be reached.

I also believe that, in the aftermath of *People v Van Deusen*, this Court may not carve out an additional exception to the statutory prohibition of CPL 430.10, as the majority asserts, and I respectfully disagree with the majority's further position that CPL 470.05 (1) requires remedies other than vacatur in situations like this. Given the present state of the law, *Van Deusen's* interpretation of *Catu's* language appears to control. Any statutory changes should be left to the Legislature and any exceptions to the *Van Deusen* and *Catu* holdings, in my judgment, should reside exclusively with the Court of Appeals.

GONZALEZ and CATTERSON, JJ., concur with McGUIRE, J.; SAXE, J.P., and MARLOW, J., dissent in a separate opinion by MARLOW, J.

Judgment, Supreme Court, New York County, rendered May 14, 2002, as amended May 31, 2005, and order, same court, entered on or about May 31, 2005, affirmed.